UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN C.,<br><br>        Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>        Defendant. | Case No.:  20-cv-463-DEB<br><br>**ORDER: (1) ON JOINT MOTION; (2) REVERSING DENIAL OF BENEFITS; AND (3) REMANDING FOR FURTHER PROCEEDINGS**<br><br>**[DKT. NO. 19]** |

**I. INTRODUCTION**

  Plaintiff Kevin C. seeks review of the Commissioner of Social Security's denial of disability benefits. Dkt. No. 1. The parties filed a Joint Motion for review of the Administrative Law Judge's ("ALJ") decision denying Plaintiff benefits. Dkt. No. 19. For the reasons discussed below, the Court reverses the denial of benefits and remands the case for further proceedings.

/ /

/ /

/ /

/ /

/ /

## II.   PROCEDURAL BACKGROUND

On February 25, 2016, Plaintiff applied for disability benefits, claiming disability beginning January 1, 2014. AR 27, 1043–49.[1] The Social Security Administration denied Plaintiff's claim and denied reconsideration. AR 958, 975. Plaintiff requested a hearing, which an ALJ held. AR 919-45, 994. Following the hearing, the ALJ issued a decision finding Plaintiff not disabled. AR 26–36. The Appeals Counsel denied Plaintiff's request for review. AR 1–7. Plaintiff then filed this case. Dkt. No. 1.

## III.   SUMMARY OF ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2014. AR 27.

At step two, the ALJ found the following severe medically determinable impairments: lumbar degenerative disc disease, cervical degenerative disc disease, myofascial pain syndrome, degenerative joint disease status post bilateral bunionectomies of greater toes, major depressive disorder, anxiety disorder, post-traumatic stress disorder, and history of alcohol dependence. AR 27.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled those in the Commissioner's Listing of Impairments. AR 28–29.

Before proceeding to step four, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform medium work "with frequent postural activities; occasional climbing ladders, ropes, and scaffolds; occasional crawling; occasional overhead reaching; and capable of nonpublic, simple, routine tasks." AR 29.

---

[1] "AR" refers to the Administrative Record lodged on September 8, 2021. Dkt. No. 14. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by the CM/ECF.

At step four, the ALJ concluded Plaintiff could not perform his past relevant work. AR 34.

Finally, at step five, the ALJ accepted the Vocational Expert's ("VE") testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy. AR 35. The ALJ, therefore, concluded Plaintiff was not disabled. AR 36.

## IV.  STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether the ALJ applied the proper legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (internal quotation omitted). It is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation omitted). "[I]f evidence exists to support more than one rational interpretation, [the Court] must defer to the Commissioner's decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## V.  DISCUSSION

Plaintiff contends the ALJ committed two errors: (1) erroneously determined "the [VE's] testimony is consistent with the information contained in the [Dictionary of Occupational Titles ("DOT")]"; and (2) failed to "offer legally sufficient rationale" for rejecting Plaintiff's testimony. Dkt. No. 19 at 8, 18. The Court addresses each of these claimed errors in turn.

//
//

**A. VE Testimony and DOT**

Plaintiff argues the ALJ failed to resolve an apparent or obvious conflict between the jobs identified by the VE and the DOT's definition of their requirements. Dkt. No. 19 at 4–10. Defendant responds that "[n]ot only is there no apparent obvious conflict, there is no conflict whatsoever . . . ." *Id.* at 11. The Court finds no conflict.

> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> > Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
> >
> > If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *4. "For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent" that is, "the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).

At the hearing, the ALJ posed the following hypothetical to the VE: "our hypothetical individual is limited to no more than medium work, with frequent postural, activities; occasional ladders, ropes, or scaffolds; occasional crawling; **occasional overhead reaching**; nonpublic, simple, routine tasks." AR 941 (emphasis added). The VE identified packers and checkers/weighers as examples of work available for Plaintiff. AR 941. The ALJ asked the VE whether his testimony was consistent with the DOT, and the VE responded in the affirmative. AR 943.

DOT 579.685-03 describes a packer's duties as:

> Tends machine that compresses stack of mineral wool insulation batts and inserts them into bag cover: Starts machine and compressing mechanism. Opens and slides bag cover form for

> filling. Pulls lever to operate discharge mechanism and force stack into bag. Slides package onto table for stapling.

AR 1226.

DOT 369.687-01 describes a checker's duties as:

> Verifies number and type of laundered or dry cleaned articles by checking against customers' lists: Inspects articles for cleanliness and neatness of finish. Returns incomplete laundry bundles to bin. Folds curtains lengthwise and drapes curtains over hangers. Hangs dry cleaned garments on hangers, covering articles with paper or bags. May fill customers' orders for clean linens, such as sheets, towels, aprons, and uniforms. May wrap and load bundles onto trucks for delivery to customers. May count linen supplies returned by . . . to verify quantities shown on return list . . . .

AR 1228.

Plaintiff argues both job descriptions "requir[e] frequent use of both upper extremities to reach overhead" and cites to cases finding a conflict between occasional and frequent reaching, necessitating the ALJ to resolve the conflict on remand. Dkt. No. 19 at 6, 10 (citing *Jordan v. Astrue*, No. 9-cv-1559-MMA-WMC, 2010 WL 2816234, at *5 (S.D. Cal. May 4, 2010), *report and recommendation adopted*, 2010 WL 2816233 (July 16, 2010); and *Richardson v. Astrue*, No. 11-cv-1332-LHK, 2012 WL 5904733, at *6 (N.D. Cal. Nov. 26, 2012)). In both *Jordan* and *Richardson*, however, the DOT descriptions expressly required frequent reaching. *Jordan*, 2010 WL 2816234, at *5 ("[T]he Court notes the reaching requirements [for assembler, production inspector, and garment folder] are listed as frequent . . . . Clearly, these reaching designations conflict with a limitation of occasional reaching."); *Richardson*, 2012 WL 5904733, at *6 ("[T]he DOT describes [cashier, office helper, merchandise marker, and pari-mutuel ticket seller] as requiring 'frequent' reaching. . . . Many Courts have held that there is a potential inconsistency between: (1) VE testimony that a job could be performed by someone who can only occasionally reach up; and (2) a DOT job description that requires frequent reaching.").

Here, neither the checker nor packer descriptions mention the frequency or direction of reaching. Although "[p]ull[ing] lever[s] to operate discharge mechanism" as a packer may involve reaching, it would most likely be a forward and down movement, not overhead reaching. And placing "dry cleaned garments on hangers" also does not necessarily require overhead reaching. The DOT is silent on the frequency of both requirements. *See Dewey v. Colvin*, 650 F. App'x 512, 514 (9th Cir. 2016) ("Here, the DOT is silent on whether the jobs in question allow for a sit/stand option. There is no conflict.") (internal citation omitted); *Doty v. Colvin*, No. 15-cv-00507-AS, 2016 WL 1089171, at *5 (C.D. Cal. Mar. 18, 2016) (collecting cases and "agree[ing] with the decisions from other circuits and district courts that have found no conflict when the DOT is silent about a particular mental or physical requirement.").

In sum, there is no conflict between the DOT and the VE's testimony. The ALJ, therefore, did not err. *See Olivia M. v. Berryhill*, No. 17-cv-6872-AGR, 2018 WL 6179489, at *4 (C.D. Cal. Nov. 27, 2018) ("Nothing in the assembler's job description appears to require overhead reaching such that the ALJ would have been required to ask additional questions."); *Woods v. Comm'r Soc. Sec. Admin.*, No. 14-cv-01761-MA, 2016 WL 223707, at *11 (D. Or. Jan. 19, 2016) ("Plaintiff's argument would require this court to read into each of the above DOT job descriptions a requirement of more-than-occasional overhead reaching, a requirement not currently present. Therefore, I conclude that plaintiff has failed to identify an apparent conflict between the VE's testimony and the DOT.").

### B. Plaintiff's testimony

Plaintiff argues the ALJ failed to provide "sufficient articulated rationale" for rejecting Plaintiff's testimony and failed to "connect any of [Plaintiff's] testimony to the ALJ's analysis." Dkt. No. 19 at 18–19. The Court agrees the ALJ's opinion does not meet the applicable legal standards.

In evaluating a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Id.* (internal quotation omitted); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

In his March 11, 2016 Function Report, Plaintiff testified that chronic pain; the inability to sit, stand, bend, read, bend his neck, and lift; and migraines limit his ability to work. AR 1115. Further, Plaintiff stated he "can't sleep all night ever"; needs daily reminders to take his medicine; doesn't "get along with people[;] [is] hurting all the time"; and "isolate[s]." AR 1116–21.

At the July 23, 2018 hearing, Plaintiff testified:

- "My back would go out, and . . . it would take a week, maybe two weeks for it to come back. This time it didn't come back when it went out."

- "[I]njections help for a couple weeks; pain medication helps; anti-inflammatories help. The problem is, though, now they're taking my medication away."

- On a scale of one to ten, my average pain level is an "[e]ight" located "[a]ll over my lower back, my upper back, and my neck."

- "Just grabbing, lifting anything, bending over – lifting anything, getting in and out of bed, it – yeah, it's just – I've got nerves that are being pinched, so anytime I move, something's going to get whacked."

- I can only lift "a pound . . . [o]ver my head" with either arm.

- I can only be on my feet, standing, or walking "15/20 minutes at a time" and then "I have to sit down" for "15/20 minutes."

- "I don't think I could work any [hours]."

- My typical day is: "4:00 a.m. I get up and make my wife coffee. . . . Then I go back to bed and watch documentaries and wait for her to get home. . . . I spend the day in bed."

- I need help taking care of myself. "My wife's been showering with me because I can't reach down and get my lower extremities. . . . I can't take baths anymore. I can get in, and then I can't get out."

- I need help with going to the rest room.

- I cannot take out the trash or load groceries into the car.

- I do not drive at all.

- I take "Percocets and fentanyl" for the pain, but "I get sleepy" and "[d]izzy sometimes" as side effects.

- "I don't sleep."

- I wake up because of "[t]he pain."

- My sciatica is "like walking on a spike."

AR 922–935.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 32; *accord Vasquez*, 572 F.3d at 591 (finding ALJ "satisfied the first prong of the ALJ's inquiry regarding the credibility of [plaintiff's] complaints" where the "ALJ acknowledged that [plaintiff's] injuries could reasonably be expected to produce *some* of the pain and other symptoms alleged") (internal quotation marks omitted).

The ALJ found Plaintiff's statements not fully credible; however, because his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 32.

The ALJ's opinion, however, does not provide "specific, clear and convincing reasons for the rejection" of Plaintiff's testimony. *Vasquez*, 572 F.3d at 591. Instead, the ALJ's ruling is analogous to what the Ninth Circuit found insufficient in *Brown-Hunter v.*

*Colvin*, 806 F.3d 487, 494 (9th Cir. 2015): the ALJ "simply stated [a] non-credibility conclusion and then summarized the medical evidence supporting her RFC determination." This is "legal error" because the decision does "not link [the specific testimony the ALJ found not credible] to the particular parts of the record supporting [the ALJ's] non-credibility determination." *Id.*; *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").

Although Defendant contends the ALJ properly found inconsistencies and contradictions between Plaintiff's testimony and the "objective record," Dkt. No. 19 at 27–28, the ALJ did not link that evidence to Plaintiff's testimony.[2] The ALJ's analysis, therefore, does not comport with the legal requirements. *See Brown-Hunter*, 806 F.3d at 494 ("[The ALJ] did not link that testimony to the particular parts of the record supporting her non-credibility determination. . . . [T]he error could not be corrected by the district court's statement of links between claimant testimony and certain medical evidence.") (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (ALJ's citation to daily activities failed to meet the required specificity standard because "the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony.").

## VI.   REMAND

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). Because there

---

[2] Defendant also argues the record supports the ALJ's credibility determination because Plaintiff's conditions improved, which is inconsistent with his alleged limitations. Dkt. No. 19 at 28–29. The ALJ, however, did not rely on this as a reason to discount Plaintiff's credibility, and the Court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014) (declining to infer ALJ rejected a claimant's testimony based on medical findings because the ALJ "never stated that he rested his adverse credibility determinations on those findings.").

are arguably inconsistencies between the medical evidence and Plaintiff's testimony, it is not clear the ALJ was required to find Plaintiff disabled. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003) (remanding for further administrative proceedings where several "outstanding issues" remained to be resolved, it was "not clear from the record that an [ALJ] would be required to find the claimant disabled and award disability benefits"). Further administrative proceedings are, therefore, appropriate.

## VII. CONCLUSION

For the foregoing reasons, the Court reverses the denial of benefits and remands this matter for further administrative proceedings. The Clerk of the Court shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED.**

Dated: July 13, 2022

_____
Honorable Daniel E. Butcher
United States Magistrate Judge